IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the | ) | |
| | ) | No. 38466-7-III |
| JEREMY DENNISTON SETTLEMENT | ) | |
| PRESERVATION TRUST, AN | ) | |
| IRREVOCABLE TRUST, BAKER | ) | UNPUBLISHED OPINION |
| BOYER BANK, SUCCESSOR | ) | |
| TRUSTEE. | ) | |

SIDDOWAY, C.J. — This court granted Jeremy Denniston's request for discretionary review of an order summarily denying his motion to change venue of proceedings monitoring the Jeremy Denniston Settlement Preservation Trust, of which he is the sole beneficiary. Mr. Denniston sought to change venue of the proceedings from Walla Walla County, a venue selected by the trustee, to Benton County, where Mr. Denniston lives. Benton County is the venue recommended by Mr. Denniston's guardian ad litem to accommodate his disability.

Because the trial court did not explain its decision, we are unable to determine whether it abused its discretion in favoring the venue selected by a replaceable trustee over that requested by the sole beneficiary and his guardian. We remand for rehearing and the entry of findings.

No. 38466-7-III
*In re Jeremy Denniston Settlement Pres. Tr.*


FACTS AND PROCEDURAL BACKGROUND

In September 2015, Jeremy Denniston suffered extensive injuries in a motor vehicle accident that resulted in the deaths of his wife and teenaged nephew. Mr. Denniston remained comatose in the intensive care unit at Tacoma General Hospital for several weeks. The accident left Mr. Denniston with a traumatic brain injury that impaired his ability to manage his personal and financial affairs.

A guardianship of Mr. Denniston and his estate was established in Pierce County, in which Mr. Denniston's father was appointed guardian. The senior Mr. Denniston brought personal injury and wrongful death claims on behalf of his son, resulting in a multimillion-dollar settlement and the creation of the Jeremy Denniston Settlement Preservation Trust (the Trust). Marci Perkins of OmniGuardianship Services (Omni) was appointed as trustee. Structured annuities were purchased, payments from which would be paid into an account to be set up by the trustee. A substantial cash balance that remained after attorney fees, costs, and subrogation claims against the recovery was paid to the Trust. Following Ms. Perkins's appointment, she evidently obtained an order providing for court monitoring of the Trust. Ms. Perkins's and Omni's offices are in Waitsburg, and she commenced the Trust monitoring proceeding in Walla Walla County.

Sometime during the pendency of settlement proceedings, Mr. Denniston moved to the city of Kennewick, which is located in Benton County. Mr. Denniston's father

2

resigned as guardian shortly before the personal injury action was resolved and Kristyan Calhoun, a certified professional guardian, assumed guardianship of Mr. Denniston's person and estate. Because Ms. Calhoun resided in Yakima, venue of the guardianship was transferred to Yakima County.

Following conflict between Mr. Denniston and Ms. Calhoun, a guardian ad litem (GAL) was appointed by the Yakima County court. After several months' investigation and a couple dozen interviews, the GAL recommended that Ms. Calhoun resign and that Nathan May be appointed to serve as successor guardian. The GAL did not recommend that the guardian serve as trustee of the Trust "at this time." Clerk's Papers (CP) at 280. She recommended that Mr. Denniston "be encouraged to participate in financial planning" and that "the guardian change venue of this guardianship and the [T]rust (pending in Walla Walla County) to the county where [Mr. Denniston] resides so he may have improved access to court proceedings impacting his life." *Id.* The GAL explained that she "recommend[ed] this matter be transferred to the county in which [Mr. Denniston] resides because travel is a barrier for [him] as a result of his disability." CP at 303. An order was entered appointing Mr. May as guardian and transferring the guardianship action to Benton County.

In August 2019, Omni filed a notice of intent to resign as trustee. By the terms of the Trust, Mr. Denniston and his court-appointed guardian "shall be consulted before the

Court appoints a Successor Trustee." CP at 11. On August 26, 2019, attorney David Grossman of the law firm of Minnick-Hayner obtained an order in the trust monitoring proceeding appointing Baker Boyer National Bank (Baker Boyer) as the successor trustee. The order provided that "[u]pon review and approval of the resigning [t]rustee's final report and accounting, this action shall be dismissed." CP at 22.

Shortly after Baker Boyer was appointed as trustee, but before the trust monitoring proceeding was dismissed, Mr. May's attorney, Ronald St. Hilaire, served his notice of appearance in that action on Omni and Baker Boyer. Mr. Grossman acknowledged receipt of Mr. St. Hilaire's appearance and informed Mr. St. Hilaire that he would serve him with the trustee's final accounting, after which the action would be dismissed. Mr. St. Hilaire testified by declaration that dismissal of the Walla Walla trust monitoring proceeding was "presumably so that trust monitoring could be had in Benton County moving forward." CP at 74.

On March 6, 2020, Mr. Grossman, acting on behalf of Baker Boyer, filed a petition and motion to reestablish monitoring for the Trust. Despite the GAL's recommendation that venue of the trust monitoring be changed from Walla Walla "to the county where [Mr. Denniston] resides," CP at 280, the petition was filed in Walla Walla County. Mr. May testifies that he was never served with copies of the petition, motion and note for hearing, and that irregularities in the certificates of service suggest they were

sent to the wrong address. In addition to Mr. May's insistence that none of the materials was received at his office, neither he nor Mr. St. Hilaire attended the hearing on the petition, which they would have learned of only if the materials were properly addressed. Mr. May does not dispute receiving e-mailed copies of the order establishing trust monitoring and Mr. Grossman's attorney fee application after the fact, in late March 2020, even though they were directed to Mr. May's old e-mail address.

Almost a year later, on February 4, 2021, Mr. St. Hilaire wrote Mr. Grossman to ask that venue of the trust monitoring action be transferred to Benton County and consolidated with the guardianship proceeding. He stated that the order establishing trust monitoring was obtained without advance notice to him or Mr. May.

Mr. Grossman declined to request transfer of the action. He took the position that the petition and motion *were* served on Mr. May. While he apologized for not providing a courtesy copy to Mr. St. Hilaire, added, "I would assume that he notified you." CP at 70. He stated,

> We believe it is most cost-effective that the Trust be monitored by the Walla Walla Court. The successor Trustee is here, as am I, its attorney. The trust accountings are straightforward and should not be expected to be controversial. However, if I am to present the accountings in the Benton County Superior Court, a relatively simple hearing will likely consume half a day in travel and Court time. The cost to accomplish this in Walla Walla is significantly less. We, therefore, respectfully decline your suggestion that the Walla Walla proceeding be dismissed.

*Id.*

5

On March 16, 2021, Mr. St. Hilaire was served by mail with a pleading and note for hearing in the trust monitoring action. Seizing on the fact that this was "the first properly served notice of the pendency of [the trust monitoring] action that [he] received," CP at 75, Mr. St. Hilaire moved within four months on Mr. Denniston's behalf to change venue to Benton County. The motion argued that under RCW 11.96A.050(2), Mr. Denniston was entitled to have venue moved to the county with the strongest connection to the Trust as determined by the court. Alternatively, it argued for a change of venue under RCW 11.96A.050(8), which authorizes a change of venue "in the discretion of the court."

Mr. Denniston argued that Benton County had the strongest connection to the Trust because Mr. Denniston lives in Benton County and wants to participate in hearings related to the Trust, but is discouraged from doing so since he fears driving long distances due to his accident. Mr. St. Hilaire also explained that the Trust held a deed of trust on property in Benton County for Mr. Denniston, and that Baker Boyer maintained a branch in Benton County where it employed trust officers.

Baker Boyer responded with a declaration from Mr. Grossman's paralegal disputing Mr. May's testimony that none of the bank's initial filings ever arrived at his correct street address. She testified that while her certificate of service attached to the *motion* bore the wrong address, she believed she would have mailed all three documents

to the correct address "because Mr. May told me his correct address." CP at 255. She also stated that "[t]he documents were not returned to our office as undeliverable." *Id.* Baker Boyer also argued the motion was untimely because Mr. May had actual notice of the proceeding by virtue of the e-mailed order he received at his old e-mail address in late March 2020.

Baker Boyer argued that the court should exercise its discretion to retain the action in Walla Walla because John Mathwich, its trust officer who manages Mr. Denniston's trust, works out of Walla Walla, and no equally qualified trust officers worked out of Benton County. It also argued that trusts are typically monitored in the jurisdiction where the trustee resides.

After hearing oral argument, the court summarily denied Mr. Denniston's motion. Mr. St. Hilaire asked whether the court was finding that the motion was timely filed under RCW 11.96A.050(2). The court replied, "If you want to propose specific findings, they can be made," but that "I don't know that [the motion] was [timely filed], frankly, based on everything that I heard." CP at 13-14.

Mr. Denniston moved this court for discretionary review. Our Commissioner granted the motion.

No. 38466-7-III
*In re Jeremy Denniston Settlement Pres. Tr.*

ANALYSIS

Baker Boyer's petition framed the trust monitoring action as one brought pursuant to the Trust and Estate Dispute Resolution Act (TEDRA), ch. 11.96A RCW. CP at 2.[1] TEDRA provides that venue for a proceeding relating to this sort of settlement trust is "in the superior court of the county where any qualified beneficiary of the trust as defined in RCW 11.98.002 resides, the county where any trustee resides or has a place of business, or the county where any real property that is an asset of the trust is located." RCW 11.96A.050(1)(b).

RCW 11.96A.050(2) provides that "[a] party to a proceeding pertaining to a trust may request that venue be changed." If the request is made within four months of the giving of the first notice of a proceeding pertaining to the trust, or "for good cause shown,"

> venue must be moved to the county with the strongest connection to the trust as determined by the court, considering such factors as the residence of a qualified beneficiary of the trust as defined in RCW 11.98.002, the residence or place of business of a trustee, and the location of any real property that is an asset of the trust.

*Id.*

---

[1] A TEDRA action ordinarily requires service of a summons, and none was included in the record on appeal. RCW 11.96A.100. If an issue, it can be addressed on remand.

Otherwise, a request to change venue "may be granted in the discretion of the court." RCW 11.96A.050(8). "'A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or when untenable reasons support the decision.'" *In re Guardianship of Mesler*, 21 Wn. App. 2d 682, 701, 507 P.3d 864 (2022) (quoting *In re Guardianship of McKean*, 136 Wn. App. 906, 918, 151 P.3d 223 (2007)). A trial court abuses its discretion when it applies the wrong legal standard or categorically refuses to consider evidence of a fiduciary duty. *Id.* at 705.

Questions whether the trial court abused its discretion arise because the GAL recommended that Mr. Denniston "be encouraged to participate in financial planning" and that venue of the trust monitoring action be changed from Walla Walla County to the county of his residence, so that he would not be faced with travel that is difficult, given his disability. CP at 280; *and cf.* GR 33 (Requests for Accommodation by Persons with Disabilities). Article 9, section C of the Trust agreement requires that Mr. Denniston and his court-appointed guardian be consulted before the court appoints a successor trustee, and it is not clear whether Baker Boyer's intent to disregard the GAL's venue change recommendation was part of its consultation with Mr. Denniston and Mr. May before being appointed. Mr. Denniston is the sole beneficiary of the Trust, while article 9 of the Trust permits Baker Boyer to resign or be removed for good cause, so it is under no obligation to continue serving if traveling to Benton County annually is too much of an

inconvenience for its trust officer. As for the expense of a trust officer and possibly its lawyer traveling to Benton County annually,[2] that expense is borne by Mr. Denniston's Trust, not by the bank.

While findings are not always needed for us to review an order denying a change of venue, some findings are required for effective appellate review in this case. First, we need to know whether the trial court concluded that Mr. Denniston either filed his motion within four months of receiving the required notice or demonstrated "good cause" for waiving the four-month requirement. If so, we need findings addressing which county the court found to have the strongest connection with the Trust, applying the statutory factors.

Alternatively, if the court concluded that the four-month deadline applied and Mr. Denniston's motion was untimely, we need findings explaining how the trial court weighed the competing interests of Mr. Denniston, Mr. May, and Baker Boyer.

We reverse the order denying a change of venue and remand for the trial court to enter findings, recognizing that this may require the court to reconsider evidence already submitted and consider new evidence that may be relevant.

---

[2] Mr. Grossman had explained that expense would be increased because a Minnick-Hayner lawyer would have to travel to Benton County, while trust officer Mathwich had testified that the bank would have to hire a new attorney.

No. 38466-7-III
*In re Jeremy Denniston Settlement Pres. Tr.*


Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, C.J.

WE CONCUR:

Lawrence-Berrey, J.

Staab, J.